**SO ORDERED.**

**SIGNED this 17th day of October, 2019.**



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

PUBLISHED

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| IN RE: | |
|---|---|
| HORACIO VAZQUEZ | Case No. 18-12277<br>Chapter 7 |
| Debtor. | |
| IN RE: | |
| ARACELY VAZQUEZ | Case No. 18-12278<br>Chapter 7 |
| Debtor. | |

## MEMORANDUM OPINION

A Kansas debtor who lives in a city or town may exempt a homestead of up to one acre from the property of the bankruptcy estate if the debtor owns the real estate and resides there either alone or with family. Those factual and legal determinations are made as of the bankruptcy filing date. Married and separated on

1

the petition dates, Horacio and Aracely Vazquez filed separate cases, each attempting to exempt separate residences situated on contiguous lots. Even though the adjacent lots total only one-third of an acre in area, only Aracely resides in a home that she owns. The Trustee's objection to her homestead exemption is overruled. Because Horacio attempted to exempt a second home that only Aracely owns, and married debtors may only claim one homestead under Kansas law, the Trustee's objection to his exemption must be sustained.

Findings of Fact

Horacio and Aracely Vazquez married in 2015, but separated in the summer of 2018 before each filed separate bankruptcy petitions on November 27, 2018. On the petition date Aracely lived with her children in a home at 1617 Holland Street in Great Bend. Horacio lived in the house next door, 1621 Holland.[1] Each claimed their respective residences as their exempt homesteads. Their bankruptcy trustee objected to the exemptions in each case.

Before she married Mr. Vazquez, Aracely Cerda agreed to buy the house at 1621 Holland from Michael Whetham on a contract for deed signed on January 18, 2011.[2] After she signed the contract, Whetham encumbered the property with a mortgage but agreed to deed the property to Ms. Cerda and to pay the debts secured by the mortgage. On January 24, 2012, Whetham deeded the property to Cerda,

---

[1] On his original petition, Horacio stated his address was 1617 Holland and that he had lived there the last three years. *See* Doc. 1, p. 8. He changed that address to 1621 Holland the day after the case was filed. *See* Doc. 8. On his original Schedule A/B, he claimed an interest (with another) in 1621 Holland, but he amended that schedule on February 1, 2019 to reflect that he owned no real estate. See Docs. 1 and 36.

[2] Ex. 3A.

"subject to" the mortgages of the Bank of Holyrood.[3] Whetham has since paid most or all of the debt. Ms. Cerda married Mr. Vazquez in 2015, but did not convey any interest in 1621 Holland to him.

After they married, Aracely and Horacio purchased 1617 Holland from Crystal Torres who deeded that property to them on March 30, 2015 as joint tenants with the right of survivorship.[4] They granted the Bank of Holyrood a purchase money mortgage on 1617 Holland and a second mortgage on 1621 Holland to secure the purchase money loan for the Torres transaction.[5] The 1617 Holland mortgage secures repayment of $45,300 and the 1621 Holland mortgage secures $15,000.[6] The Bank of Holyrood's claims in these cases seeks repayment of $50,266.79 on the April 2018 renewal note that is secured by the two homes.[7]

Until their separation in July of 2018, the Vazquez family lived in 1617 Holland and rented 1621 Holland out to a third party. After they separated, Horacio moved into 1621 Holland with Aracely's permission. The evidentiary record does not reflect that Horacio paid rent to Aracely or that his occupancy was for an agreed-upon term. Aracely testified that they intended the separation to be permanent. They lived apart, but neither filed a petition for divorce or separate maintenance before the bankruptcy petition date because they could not afford to pay attorney

---

[3] Ex. 3. The real estate at 1621 Holland is legally described as Lot 1, Block 69, of the Original Town of Great Bend, Kansas. Ex. 2.
[4] Ex. 6. The real estate at 1617 Holland is legally described as Lot 2, Block 69, of the Original Town of Great Bend, Kansas. Ex. 5.
[5] Ex. 7.
[6] *Id.*
[7] *Id.*

3

fees for the bankruptcy cases and a divorce. In March 2019 Aracely filed a divorce case *pro se* in Barton County District Court, and received a consent decree of divorce on June 7, 2019.[8] In the decree, the parties agreed to divide their real estate as follows. Title to 1617 Holland would be set over to Aracely who will continue to live there while Horacio would receive title to 1621 Holland and live there. Horacio will pay the Bank of Holyrood mortgages.[9] Aracely stated that she had to file bankruptcy because she lost her job. Her schedules reflect her owing significant unsecured debt, including a student loan, some in collection status. Horacio likewise scheduled substantial unsecured debt.

On the date of the petitions November 27, 2018, Aracely and Horacio were legally married. Aracely owned her joint tenancy interest in 1617 Holland and lived there with her children, claiming it as her homestead. She also owned a 100 percent fee simple interest in 1621 Holland subject only to the Holyrood Bank's mortgage. Horacio lived in 1621 Holland, but had no legal title or other ownership interest in that property. Nevertheless, he claimed 1621 Holland as his homestead. Indeed, on his amended bankruptcy schedules, he claimed no interest in *any* real property, though on the petition date he owned his joint tenancy interest in 1617 Holland.[10] The Chapter 7 trustee objected to Aracely's and Horacio's homestead exemptions, asserting that because Aracely and Horacio were married on the date of the

---

[8] Ex. H.
[9] *Id.* Neither debtor sought relief from the automatic stay to file and prosecute the property division in the divorce, rendering the decree's validity questionable. *See* 11 U.S.C. § 362(a).
[10] See Doc. 36 in Case No. 18-12277. Compare with Horacio's originally filed schedules A/B, Doc. 1, listing an interest in 1621 "with another," also an inaccurate statement of his interests.

4

petition, they could only claim one of the Holland properties exempt.[11] Only Aracely testified at trial. Both debtors stipulated with the trustee that if Horacio were to testify, his testimony would be substantially the same as Aracely's. The case was submitted on the stipulated exhibits and her testimony alone.[12]

Jurisdiction

Objections to exemptions are contested, core proceedings under 28 U.S.C. § 157(b)(2)(B) and the bankruptcy court may exercise subject matter jurisdiction under 28 U.S.C. § 1334 and § 157(a) and (b)(1) and issue a final order.

Analysis

### 1. *Real estate the debtors owned and could exempt at filing.*

A Kansas chapter 7 debtor may "exempt from property of the estate" that property which is exempt under Kansas law.[13] "Property of the estate" includes "all legal and equitable interests of the debtor in property as of the commencement of the case."[14] A debtor therefore may only exempt property that is his or hers on the date the case is filed or meets the requirements of the Kansas exemption laws.

Aracely and Horacio Vazquez filed separate bankruptcy cases in November of 2018. Their filings created two separate bankruptcy estates: Aracely's included her joint tenancy fee title interest in 1617 Holland and her sole fee title interest in 1621 Holland while Horacio's estate only included his joint tenant interest in 1617

---

[11] Doc. 27 in No. 18-12277 and Doc. 16 in No. 18-12278.
[12] At trial, both debtors appeared in person and by their attorney Justin Balbierz. The Chapter 7 trustee J. Michael Morris appeared on his own behalf.
[13] *See* 11 U.S.C. § 522(b)(1)-(3). Kansas has specifically opted out of the federal exemption scheme codified at § 522(d). *See* KAN. STAT. ANN. § 60-2312(a) (2005).
[14] 11 U.S.C. § 541(a)(1).

5

Holland; he held no legal or equitable interest in 1621 Holland. No divorce or separate maintenance case was pending between these debtors on the petition date. Therefore no "marital estate" had been created.[15] If she met the requirements imposed by Kansas's exemption laws, Aracely could exempt from property of her bankruptcy estate either of her fee title interests in 1617 and 1621 Holland, depending on where she lived. Horacio owned no title or fee interest in 1621 Holland—the only tract that became part of his bankruptcy estate was his joint tenant fee interest in 1617 Holland.

2. *Only an owner, owner's family, or both may claim "a" Kansas homestead.*

The Kansas homestead exemption is codified in § 60-2301.[16] Kansas courts liberally construe exemption laws in favor of the intended beneficiaries and objectives of the exemption.[17] The purpose of the homestead exemption is to protect the family from destitution and to benefit society by preventing its citizens from becoming paupers or public charges.[18] An urban homestead consists of "one acre within the limits of an incorporated town or city" that is "*occupied as a residence* by *the owner* or *by the family of the owner*, or *by both the owner and family . . .*" [19]

---

[15] KAN. STAT. ANN § 23-2801 (2018 Supp.).
[16] KAN. STAT. ANN. § 60-2301 (2018 Supp.).
[17] *Miller v. Keeling*, 185 Kan. 623, 627, 347 P.2d 424 (1959).
[18] *Anderson v. Shannon*, 146 Kan. 704, *10, 711 73 P.2d 5 (1937)
[19] KAN. STAT. ANN. § 60-2301 (2018 Supp.) (Emphasis added). *See also* KAN. CONST., Art. 15, § 9. Kansas has opted out of the federal exemption scheme provided in 11 U.S.C. § 522(b)(2) and (d), except for the federal exemptions listed in § 522(d)(10). KAN. STAT. ANN. § 60-2312(a) and (b) (2005). Federal bankruptcy law does, however cap the "amount of interest" that the debtor acquires in the homestead within the 1,215 days preceding the filing. 11 U.S.C. § 522(p)(1). That limitation is not in play in these cases.

**6**

A valid Kansas homestead must first be "occupied as a residence." There is no dispute that on the date of the petition, Aracely "occupied" 1617 Holland "as a residence." Horacio "occupied" 1621 Holland "as a residence."

But in order to claim a valid Kansas homestead, occupancy of the residence must be as the owner, the owner's family, or the owner and the family.[20] There is no question that Aracely is the owner of 1617 Holland (with Horacio) and that she resides there with her family. Horacio may occupy 1621 Holland, but he does not own it. At best, Horacio had a possessory interest in 1621 Holland as a tenant at will.[21] That interest is not an ownership interest sufficient to exempt under Kansas law.[22] But that does not end the inquiry. The Kansas homestead exemption allows

---

[20] A holder of a legal or equitable interest in real estate is sufficient to meet the "owner" requirement. *See Redmond v. Kester,* 284 Kan. 209, 213-16, 159 P.3d 1004 (2007) (recognizing that fee title interest is not required and that a homestead right may be established on a cotenancy title and an equitable title such as an executory contract to purchase).

[21] KAN. STAT. ANN. § 58-2501 (2005). *See Brown v. Brooks,* 142 Kan. 556, 51 P. 2d 32 (1935) ("A permissive occupation of real estate, where no rent is reserved or paid and no time is agreed upon to limit the occupation, is a tenancy at will," quoting 35 C.J. 1122); *Colver v. Central States Fire Ins. Co.,* 130 Kan. 556, 287 P. 266, 268 (1930) (stating that a tenant at will has "no certain nor sure estate, for the lessor may put him out at what time it pleaseth him.").

[22] The Court's independent research uncovered no Kansas case permitting a tenant at will to exempt the property they occupy with the permission of the owner. *See Johnston v. Gibson,* 184 Kan. 109, 112-13, 334 P.2d 348 (1959) (testatrix's will that granted right to full use and possession of land rent-free, without an underlying estate, did not create a homestead interest where will devised fee title in the land to another); *Hampton v. Gilliland,* 23 Tex. Civ. App. 87, 56 S.W. 572, 573-74 (1900) (Son, who held a remainder interest, and lived at the family homestead with his mother, who had a life estate, had no homestead interest himself in the homestead until his remainder interest became a present interest; the mother as life tenant could have ousted her son at any time because the son's occupancy was dependent entirely on her consent); *In re Brunson,* 498 B.R. 160, 168-69 (Bankr. W. D. Tex. 2013) (assuming debtors who lived with the holder of the life estate by consent were tenants at will, their continued use and occupancy of the home during the life estate was dependent upon the life tenant's "whim," and he had the "unfettered right" to exclude debtors at will, and would not support debtors' claim of homestead exemption).

7

the "family" of the owner of the property to claim it exempt. Because Horacio and Aracely were married on the date of the petition, they were members of the same family and in theory, Horacio could have claimed exempt the 1621 Holland property as "family" of the owner.[23] Therein lies the problem. Kansas courts have traditionally concluded that a family (including married Kansas debtors) are entitled to only one homestead.[24] Family members may not claim different homesteads. Here, the entire Vasquez family resided at 1617 Holland until Horacio and Aracely separated prior to filing their bankruptcy cases. Horacio voluntarily left 1617 Holland when they separated, and it was undisputed that the separation was

---

[23] *See In re Estate of Dittemore,* 152 Kan. 574, 106 P.2d 1056, 1058 (1940) (for purposes of homestead exemption "family" extends to father, mother, and children and "groups bound together by ties of consanguinity living together as a household"); *In re Estate of Phillippe,* 23 Kan. App. 2d 436, 922 P.2d 151 (1997) (adult son who moved back into family home after his divorce is part of family for purposes of claiming Kansas homestead exemption).

[24] *See Atchison Savings Bank et al. v. Wheeler's Administrator,* 20 Kan. 625, 632 (1878) (denying the right to a homestead in separate tracts, the court held that the law does not recognize two simultaneous, separate and distinct homesteads for one family). *Atchison Savings Bank* remains the law in Kansas and courts have cited it with approval and adhered to the "one homestead rule," since the late 1800s. *See Giblin v. Beeler,* 396 F.2d 584 (10th Cir. 1968) (finding that Wilma Beeler had not abandoned the homestead by living away from the homestead at various times and declining to extend the Kansas homestead exemption to permit "two separate and distinct homesteads at the same time"); *Swenson v. Kiehl,* 21 Kan. 533, 534 (1879) (recognizing a landowner may not have two homesteads); *Thompson v. Millikin,* 102 Kan. 717, 172 P. 534, 535-36 (1918) ("[I]t is true that one person or one family may not have two homesteads at one time." Husband's voluntary absence from family home or abandonment of wife did not destroy the homestead character of family residence); *Cole v. Coons,* 162 Kan. 624, 178 P.2d 997 (1947) (one cotenant cannot establish homestead to the exclusion of other cotenants where property is owned by co-tenancy); *Commerce Bank of Kansas City v. Odell,* 16 Kan. App. 2d 704, 827 P.2d 1205 (1992) (joint tenants could claim exempt their interest in only one homestead exemption of 160 acres); *In re Sauer,* 403 B.R. 722 (Bankr. D. Kan. 2009) (construing Kansas homestead statute and concluding that married, but separated, debtors on the date of the petition could not claim separate homesteads in different cities and finding plain language of homestead exemption allowed "a" single homestead for a family); *In re Ruck,* 451 B.R. 128, 134-35 (Bankr. D. Kan. 2011) (chapter 7 debtors could not claim exempt two separate tracts no more than a mile apart, even though their divorce proceeding was pending when they filed their bankruptcy).

8

permanent. In that sense, Horacio abandoned the family homestead.[25] But because he was still married on the date of filing, he could not establish a different homestead from 1617 Holland under the "one homestead rule." Finally, even if his possessory interest in 1621 Holland was sufficient to claim the homestead exemption and Kansas law permitted family members to claim different residences exempt, the Court heard no testimony that Horacio intended to establish 1621 Holland as his homestead.[26] Horacio's claimed exemption in 1621 Holland as his homestead must be rejected.

### 3. *The single acre limit cannot save Horacio's homestead.*

The debtors assert that they can exempt both 1617 Holland and 1621 Holland because the lots are contiguous and, combined, comprise far less than the one-acre limit imposed by § 60-2301. That argument ignores two things.[27] First, each of these lots is in a separate bankruptcy estate. Even though the debtors were married when they filed and could have filed a joint petition, they filed separate cases that created separate estates. Second, even had Horacio and Aracely filed a joint case and claimed their respective dwellings exempt, their cases are very different from the cases they rely on, *Sauer*[28] and *Hall*.[29]

---

[25] *See In re Estate of Fink,* 4 Kan. App. 2d 523, 527-28, 609 P.2d 211, *rev. denied* 228 Kan. 806 (1980) (two-part test for determining whether homestead has been abandoned is whether party voluntarily removed self from property and had no intent to return).
[26] *See Williams v. Roberts,* 139 Kan. 460, 32 P.2d 229, 230 (1934) (noting that in plaintiff's examination and cross-examination there was no evidence that [plaintiff] exhibited any kind of conduct indicating permanence of residence in Attica beyond simply living there).
[27] As previously concluded, Horacio's claimed homestead also runs afoul of the "one homestead" rule in Kansas, even though the two homes are on contiguous lots.
[28] *In re Sauer,* 403 B.R. 722 (Bankr. D. Kan. 2009).
[29] *In re Hall,* 395 B.R. 722 (Bankr. D. Kan. 2008).

**9**

These cases are easily distinguished. *Sauer* holds that the language of the exemption statute grants "a" singular family homestead occupied by the owner and/or the owner's family.[30] As noted above, Kansas case law adheres to the "one homestead rule."[31] If debtors are married on the date of filing, they must share a single homestead exemption.[32] In *Sauer* a married but separated couple claimed separate, noncontiguous residences in different Kansas towns as their homesteads. They filed a joint petition. They did not evidence any intention of remaining permanently separated. That Court recognized several bases upon which to deny what the Sauers proposed. First, permitting them to each exempt one non-contiguous acre "would be to disregard the plain words of § 60–2301 and be an unwarranted expansion of the homestead exemption."[33] Second, the Court noted the danger of fraud or abuse risked by adopting the Sauers' theory—

> It has the potential to "encourage" married debtors to create separate homesteads shortly before filing bankruptcy in order to shield property that would otherwise be available to pay claims of creditors. It could lead to the situation of debtors separating right before bankruptcy, establishing separate homesteads and claiming two separate homestead exemptions, and then reconciling and moving back together

---

[30] *Sauer*, 403 B.R. at 730.
[31] *See* note 24, *supra*.
[32] States with similar homestead exemptions also limit married debtors to a single homestead. *See e.g., In re Rowe,* 236 B.R. 11 (9th Cir. BAP 1999) (Applying Nevada law, a married couple filing a joint bankruptcy petition but living apart, may not claim a homestead exemption in their separate residences); *In re Roberts,* 211 B.R. 696 (Bankr.D.Neb.1997) (Applying Nebraska law, married couple that was separated on petition debt and contemplating a divorce and sale of marital home, were eligible for homestead exemption of the marital home), *aff'd* 219 B.R. 235 (8th Cir. BAP 1998); *In re Gunnison,* 397 B.R. 186 (Bankr.D.Mass.2008) (Applying Massachusetts law, husband and wife who were legally married, but living apart, could not each claim separate homestead exemption on different properties where they resided).
[33] *Sauer*, 403 B.R. at 730.

**10**

after the bankruptcy is completed.[34] Given that Aracely and Horacio have subsequently divorced, that fear is allayed here, but whether an exemption is valid is determined as of the date of petition and is not based on what happens afterward. Had the debtors been divorced on the date of their bankruptcy petitions they might have been entitled to each claim separate homestead exemptions, but only if they could meet the occupancy and ownership requirements of § 60-2301.[35]

In *Hall*, the bankruptcy court allowed debtors who were married, but separated, to claim separate homesteads on a single 1.33 acre tract: the wife claimed the marital home where she lived with their children as her exempt homestead, and the husband claimed a mobile home situated on the tract where he lived separately. He involuntarily vacated the marital home after a child abuse incident. In approving the double exemption, the *Hall* court limited its ruling to the case's unique factual circumstances and declared:

> [T]his holding is specifically limited to circumstances in which a husband and wife have each legitimately *established* a separate homestead pursuant to Kansas law, which separate homesteads were not created for the purpose of defeating or defrauding creditors. It is only in those admittedly rare situations where a husband and wife have remained married, but can show that they have elected to and do live apart on a permanent basis, that this holding will be applicable.[36]

The Vazquez cases are different. First, Horacio voluntarily abandoned the marital home (1617) as his homestead when he and Aracely permanently separated.

---

[34] *Id.*
[35] *Id.* at 730, n. 41.
[36] *Hall,* 395 B.R. at 731. Emphasis added.

**11**

Second, his residence (1621) is not on the same tract as the family residence. Third, the evidence in the current case does not show that Horacio intended to establish 1621 Holland as his new homestead. While Aracely testified (and Horacio agreed) that the separation was permanent, from which the Court might infer that Horacio permanently abandoned the 1617 residence as his homestead, the Court heard no evidence that Horacio intended to occupy and establish 1621 Holland as his new homestead. When he filed his bankruptcy case, he had been living there with Aracely's permission rent-free for about five months.[37] Fourth, Horacio does not have any ownership interest in 1621 Holland. *Sauer* and *Hall* are different from these cases and offer little guidance here.

### 4. *The debtors' post-petition divorce does not change the result.*

On the petition date, Horacio and Aracely were de facto separated, but still legally married. After they married, they acquired 1617 Holland and established their marital home there. Six months before the petition date, they separated, and Horacio voluntarily moved to 1621 Holland. His departure did not affect Aracely's right to claim 1617 exempt as the family homestead.[38] Aracely and Horacio did not file their state court divorce case until after the petition date. That time sequence is critical because Kansas law does not establish a "marital estate" until a divorce or

---

[37] The owner's intentions are critical in determining whether a homestead has been established. 395 B.R. at 733. Given that Horacio declined to testify at trial, his intentions are unknown. Compare *Hall* where the debtor "testified under oath that he intended to remain in the mobile home 'til I die.' " *Id.* at 734.

[38] *See Thompson v. Millikin,* 102 Kan. 717, 172 P. 534 (1918) (voluntary absence of husband who deserted family didn't destroy homestead character of residence).

**12**

separate maintenance petition is filed.[39] When a marital estate is created, each spouse obtains a common but divisible interest in the marital real estate. So, if Aracely and Horacio had filed their divorce petition before their bankruptcy petitions, they would each have held a common interest in both tracts on the petition date, subject to division by the divorce court.[40] Instead, when Aracely filed her bankruptcy case, her bankruptcy estate included her sole fee title to 1621 Holland and her joint tenancy interest in 1617 Holland while Horacio's bankruptcy estate contained only his joint tenant interest in 1617 Holland.[41]

The 2019 divorce decree and property settlement may demonstrate the debtors' mutual intention to divide the property in a certain way, but because the divorce was filed (and the decree entered) without this Court lifting the automatic stay, the decree is void.[42] Section 362(a)(3) stays "any act" to "exercise control over property of the estate."[43] Horacio and Aracely were stayed from dividing property "that is property of the bankruptcy estate" in the divorce case without obtaining

---

[39] KAN. STAT. ANN. § 23-2801 (2018 Supp.).
[40] All property owned by married persons or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, becomes marital property at the time of commencement of a divorce action. § 23-2801(a). Each spouse has a common ownership in marital property that vests at the time the divorce action is commenced, § 23-2801(b), that is subject to division by the divorce court, § 23-2802 (2018 Supp.).
[41] Horacio would also "own" an inchoate interest in 1621 Holland by virtue of his marriage to Aracely and his intestate succession right to one-half of it, but that interest becomes choate only upon her death. *See* KAN. STAT. ANN. § 59-505 (2005).
[42] *See Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir. 1990) (any action taken in violation of automatic stay is void and without effect); *In re C.W. Mining Co.,* 749 F.3d 895, 899 (10th Cir. 2014) (transfer made in violation of automatic stay is void and parties are returned to status quo as it existed prior to stay violation).
[43] 11 U.S.C. § 362(a)(3).

**13**

relief from the automatic stay.[44] Instead, they attempted to "exercise control" over 1621 Holland, property of Aracely's bankruptcy estate, by seeking a state court decree setting it over to Horacio to the prejudice of Aracely's trustee and the creditors. The state court property division has no legal effect. Indeed, the purported transfer of 1621 Holland from Aracely to Horacio via the divorce proceeding may be an avoidable unauthorized post-petition transfer of property of Aracely's bankruptcy estate under § 549.[45]

Conclusion

Aracely's claimed homestead exemption of her joint tenancy interest in 1617 Holland is allowed. She is an owner of that property and resided there with her family on the date of filing. The Trustee's objection to her homestead exemption is OVERRULED. Horacio's claimed exemption of 1621 Holland is legally invalid. He occupies it as a residence, but he has no ownership interest as § 60-2301 requires, and under Kansas law cannot claim a separate homestead from Aracely to whom he was married on the date of filing. The Trustee's objection to his homestead exemption is SUSTAINED.

The state court's division of property in Aracely's and Horacio's divorce case during the pendency of their bankruptcy cases without relief from the automatic stay is void and of no legal effect.

# # #

---

[44] *See* § 362(b)(2)(iv).
[45] 11 U.S.C. § 549(a).

**14**